**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DALE WALTER,** | : | **Civil No.  1:19-CV-769** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Commissioner
of Social Security, Andrew Saul, is automatically substituted as the defendant in
place of the former Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Dale Walter applied for disability insurance benefits under Title II of the Social Security Act on October 29, 2015, alleging disability due to chronic arthritis, nerve damage, a shattered left heel, and other leg, back and neck problems. (Tr. 96). However, after a consideration of the medical evidence, which generally showed that Walter's pain was being managed with injections and medication, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Walter could perform a limited range of sedentary work and denied his disability application.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

On October 29, 2015, Dale Walter applied for disability benefits pursuant to Title II of the Social Security Act, alleging an amended onset date of disability beginning February 5, 2013 due to chronic arthritis, nerve damage, a shattered left

heel, and other leg, back and neck problems. (Tr. 96). Walter was approximately 45 years old at the time of the alleged onset of his disability and had prior employment as a roofer, which was medium skilled work but performed at a heavy exertional level. (Tr. 20). He had limited education and could communicate in English. (Id.).

Walter suffered from chronic back pain that was initially managed with narcotics. (Tr. 246). Then, in February of 2013, Walter suffered an injury to his foot at work when he fell in a hole. (Tr. 412). On February 28, 2013, Walter was seen by Dr. Mallhi, M.D., who noted that Walter was walking with crutches and he had pain when lifting, standing and sitting. (Id.) Dr. Mallhi recommended that Walter receive nerve blocks to control the neuropathic component of his pain. (Tr. 414). Walter then presented at Geisinger Woodbine Sports Medicine for a second opinion in March of 2013. (Tr. 238). It was noted that Walter had a fracture of calcaneus with flattening of Bohler angle, and he was using crutches and a CAM boot, but that his injury showed improvement and decreased swelling. (Tr. 238-39). Walter was seen by Dr. Roza at Mifflinville Family Practice on March 18, 2013, and it was noted that his pain was improving overall and there was decreased swelling. (Tr. 488). Dr. Roza opined that Walter would not be able to return to full construction work because he was non-weight bearing. (Tr. 490).

At an April 2013 consultation, it was noted that Walter was taking methadone and Percocet for breakthrough pain, and he was seeing a pain management

3

physician. (Tr. 237). Dr. Cush did not recommend surgical intervention at that time. (Id.) At this time, Dr. Mallhi scheduled Walter for sacroiliac joint steroid injections. (Tr. 424). At follow-up appointments in May and June, Walter stated that the treatment had been controlling his pain and that he was able to perform his routine activities. (Tr. 419, 421). Walter also saw Dr. Cush at this time, who noted that Walter was using a cane to walk and that his pain was improving. (Tr. 235). Treatment notes indicate that Walter's x-ray showed no significant angular deformity. (Id.) At this visit, it was noted that Walter "may return back to work, light duty, and progress up to full duty as tolerated." (Id.) Additionally, in July of 2013, Dr. Ball., D.O., stated that Walter could return to work on July 22, 2014 with the following restrictions: no lifting more than forty pounds and limited ambulation. (Tr. 484).

Walter continued to treat with Dr. Mallhi for pain management related to his back and foot, and in September 2013, it was noted that the injections were working for temporary pain management, but that the pain gradually started to come back after a few weeks. (Tr. 425). Dr. Mallhi scheduled him for repeat peroneal nerve block and calcaneal bursa steroid injections. (Tr. 427). At a follow-up appointment in November, Walter stated that the injections again worked temporarily, but that the pain came back within a few weeks. (Tr. 428). Dr. Mallhi noted that any prolonged work at home or at his job, cold weather, and exercise increased his pain.

(Id.) Treatment notes throughout January to June of 2014 generally described Walter's pain as throbbing or tingling and noted that the injections seemed to help with Walter's pain temporarily. (Tr. 431-41). Then in September 2014, Walter stated that his pain was better overall but flared up with changing weather. (Tr. 443). Indeed, Walter stated that his pain medications, heat, rest and massages made him feel better. (Id.) Moreover, while Walter generally stated that his pain was anywhere between a 6 to 9 out of 10, in November 2014, he reported that his pain was a 4 out of 10. (Tr. 449).

Walter continued to receive injections, and he reported in February 2015 that his pain was a 3-4 out of 10, and that he was very happy with the results of his treatment. (Tr. 455). In May of 2015, although reported his pain was a 7 out of 10, he stated that had been more active outside because the weather had been better. (Tr. 461). It was noted that Walter was using back brace while he was involved "in outdoor activities and more heavy physical work." (Tr. 462). In September 2015, an x-ray showed evidence of a previous calcaneus fracture with resulting subtalar joint arthritis and no significant angular deformity. (Tr. 232). Walter was prescribed a back brace and it was noted he was walking with a cane. (Id.)

It is against this clinical backdrop that a hearing was held on this disability application on January 25, 2018, where Walter appeared and testified, and a Vocational Expert also testified. (Tr. 26-66). Following this hearing, the ALJ issued

a decision denying this application for benefits, finding that Walter remained capable of performing a range of sedentary jobs in the national economy in the representative occupations of document preparer, addresser, and final assembler. (Tr. 21).

In that decision, the ALJ first concluded the Walter had met the insured status requirements of the Social Security Act from the date of his amended onset of disability through September 30, 2015 and had not engaged in any substantial gainful activity since his amended alleged onset date of disability on February 3, 2015. (Tr. 14). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Walter suffered from the following severe impairments: osteoarthritis/calcaneal bursitis/sequela status – post left foot calcaneus fracture; degenerative disc disease and scoliosis of the cervical spine; degenerative disc disease and scoliosis of the thoracic spine; degenerative disc disease and scoliosis of the lumbar spine with post-laminectomy syndrome; and open fracture of the scaphoid bone of the right wrist**.**  (Tr. 15). The ALJ also carefully considered a number of other impairments, but the ALJ ultimately concluded that these impairments did not limit Walter's ability to perform sustained work tasks more than minimally, and thus found these impairments to be non-severe. (Id.). At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 15-16).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Walter's limitations from his impairments:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant would have been limited to occupations that required no more than occasional postural maneuvers, such as balancing, stooping, and climbing on ramps and stairs, but must have avoided occupations that required climbing ladders, ropes, and scaffolds, or kneeling, crouching, or crawling. He must have avoided occupations that required pushing or pulling with the lower extremities to include the operation of pedals. The claimant must have avoided the operation of hand levers. He would have been limited to occupations that required no more than occasional overhead reaching with the bilateral upper extremities to include overhead work. The claimant must have avoided concentrated prolonged exposure to temperature extremes, vibration, extreme dampness, and humidity. He was limited to occupations that did not require exposure to hazards such as dangerous machinery and unprotected heights. The claimant was limited to occupations requiring no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes. He would have been limited to occupations that required no prolonged reading for content and comprehension, or complex mathematical calculations such as cashier or teller work.

(Tr. 16).

In making this RFC determination, the ALJ considered all of the medical evidence in this case. (Tr. 19). On this score, the ALJ gave mixed weight to the opinion of Dr. Roza, in that the ALJ afforded great weight to Dr. Roza's conclusion that Walter could not return to construction work but afforded little weight to Dr. Roza's opinion that Walter would be limited to non-weight bearing activity. (Id.)

The ALJ reasoned that Dr. Roza's opinion did not contain a function-by-function analysis of Walter's physical limitations, and there was no indication that the limitation proposed by Dr. Roza was expected to last for twelve months. (Id.)

The ALJ gave some weight to the opinion of Phillip Longnecker, P.A., in that his opinion concluded that Walter could not return to work as a roofer. (Id.) The ALJ noted that Longnecker was considered a non-acceptable medical source but his opinion could be used to assist the ALJ in making a determination regarding the claimant's ability to work. (Id.) However, little weight was given to Longnecker's opinion that Walter should not return to work until cleared by orthopedics because this opinion was vague and unspecific, and because there was no indication that the limitation proposed by Longnecker was expected to last for twelve months. (Id.)

Additionally, the ALJ considered the opinion of Dr. Ball from July 2013, in which Dr. Ball concluded that Walter could return to work with limitations. (Id.) The ALJ afforded mixed weight to Dr. Ball's opinion, in that the ALJ gave great weight to Dr. Ball's conclusion that Walter could return to work but would be limited to sedentary work, but gave little weight to Dr. Ball's opinion concerning Walter's physical limitations, as the ALJ concluded that Walter was more limited than Dr. Ball had concluded based on the objective medical evidence. (Id.)

The ALJ also considered Walter's statements regarding the severity of his symptoms but found that the statements concerning the intensity, persistence, and

limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17). Walter stated that he had daily sciatic pain and could not be on his feet for extended periods of time. (Id.) He also stated that he used a cane to assist him in walking, but the ALJ noted that the record did not indicate the cane was prescribed by a medical professional. (Id.) The ALJ reasoned that although Walter stated he was unable to work due to his pain, Walter was able to shop in stores using an electric cart and could help with some light household chores. (Id.) The ALJ noted that Walter's treatment history of injections and medication for pain management, along with the medical evidence showing that his injuries were healing and that his examinations were largely normal, indicated that he would be able to perform a limited range of sedentary work. (Tr. 17-19).

Finally, the ALJ also considered the statements of Walter's significant other, Ramona Phelps. (Tr. 19-20). The ALJ gave Phelps' statements some, but not great weight, given that Phelps' statements largely mirrored Walter's statements regarding his symptoms, and the fact that Phelps was not medically trained to make observations concerning the signs, symptoms, frequency or intensity of unusual moods or mannerisms. (Id.)

Having arrived at this RFC assessment based upon an evaluation of these clinical records, medical opinions, and the claimant's statements, the ALJ found at Step 4 that Walter could not perform his past work. (Tr. 20). However, at Step 5, the

ALJ found that there were a number of sedentary jobs in the national economy that he could perform, such as a document preparer, an addresser, and a final assembler. (Tr. 21). Accordingly, the ALJ concluded that Walter did not meet the stringent standard for disability set by the Social Security Act and denied his disability claim. (Tr. 22).

This appeal followed. (Doc. 1). On appeal, Walter contends the ALJ erred in failing to order a consultative exam and thus erred in the RFC determination that Walter could perform a limited range of sedentary work. Walter also contends that the ALJ erred in evaluating his subjective complaints concerning his symptoms. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial

evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined

to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts

in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any

credible medical opinion supporting a claimant's allegations of disability that "the

proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D.

Pa. 2015).

These seemingly discordant legal propositions can be reconciled by

evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in

the factual setting where a well-supported medical source has opined regarding

limitations which would support a disability claim, but an ALJ has rejected the

medical opinion which supported a disability determination based upon a lay

assessment of other evidence. In this setting, these cases simply restate the

commonplace idea that medical opinions are entitled to careful consideration when

making a disability determination, particularly when those opinions support a

finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's

activities of daily living, to fashion an RFC courts have adopted a more pragmatic

view and have sustained the ALJ's exercise of independent judgment based upon all

of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir.

2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence and Lay Testimony

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for

the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical

opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Similar considerations govern an ALJ's evaluation of lay testimony. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir. 1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that

there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's

symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

## D.  **The ALJ's Decision in this Case is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial

evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Walter was not entirely disabled.

With respect to the RFC assessment, Walter challenges the ALJ's finding that he could perform a limited range of sedentary work. Walter contends that the ALJ should have ordered a consultative examination, and the lack of such an examination renders the RFC assessment erroneous. At the outset, it is well-settled that under the Social Security Regulations, an ALJ "'*may* decide to purchase a consultative examination' where 'there is an indication of a change in a [claimant's] condition that is likely to affect [claimant's] ability to work.'" <u>Rosa v. Colvin</u>, 956 F.Supp.2d 617, 622 (E.D. Pa. 2013) (quoting 20 C.F.R. § 404.1519a) (emphasis added). Indeed, the Court of Appeals has stated that an "ALJs duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability determination."

Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002); see also Mruk v. Colvin,

2014 WL 3881976, at *7 (M.D. Pa. Aug. 7, 2014).

Initially, we note that the plaintiff's brief only broadly challenges the ALJ's

decision not to order a consultative examination and does not point to any specific

ambiguities between the RFC assessment and the medical record used to make that

assessment. However, as we have explained, the ALJ was not required to order a

consultative examination. Rather, the ALJ may order an examination if there are

ambiguities in the record regarding the plaintiff's functional abilities. Here, The ALJ

limited Walter to a limited range of sedentary work with a host of functional

limitations to account for his foot and back pain, including limiting Walter to only

occasional postural maneuvers, avoiding occupations that require pushing or pulling

with lower extremities and no more than occasional overhead reaching. This RFC

determination was based on the medical record as a whole in addition to the opinions

of Dr. Roza, P.A. Longnecker, and Dr. Ball. As we have acknowledged, the medical

records showed that Walter pursued a conservative course of treatment in that

Walter's pain was being managed by injections and pain medications, and he was

prescribed a back brace. Accordingly, because the ALJ formulated this RFC

determination based on the entire medical record, and Walter has not pointed to any

ambiguities between the RFC assessment and the medical evidence, we find that the

ALJ's limitations within the RFC determination are supported by substantial evidence, and thus, the ALJ did not err by failing to order a consultative examination.

Finally, Walter argues that the ALJ erred in finding that the plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence. Walter contends that the ALJ did not consider his subjective complaints of pain, his treatment, or his medications. However, to the contrary, the ALJ discussed Walter's subjective complaints and determined that they were inconsistent with the medical evidence. Walter had stated that he could not be on his feet for long periods of time, he had issues with lifting, squatting, bending and reaching, he used a cane to help him walk, and he had daily sciatic pain. However, the ALJ noted that Walter was not prescribed a cane, and he was able to help do chores around the house and shop in stores, albeit with an electric cart. Further, the ALJ examined Walter's treatment notes, which indicated that his sciatic pain was being managed by injections and pain medications. Overall, the ALJ determined that Walter's subjective complaints concerning the severity of his pain and his impairments were inconsistent with the record as a whole. On this score, we find that the ALJ's opinion regarding the claimant's statements is supported by substantial evidence.

In this case, the ALJ was required to examine the medical evidence of record, coupled with Walter's subjective complaints regarding his impairments, and was

tasked with determining what range of work Walter could perform, if any. Given Walter's conservative treatment for his pain, and the fact that his pain was being managed during the relevant time period, the ALJ found that Walter could perform less than a full range of sedentary work. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence; that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Biestek, 139 S. Ct. at 1154, supported these determinations.

We further find that the ALJ's evaluation of the lay testimony complied with the requirements prescribed by the Commissioner's regulations and the law. At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S.

at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge


Submitted this 20th day of April, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DALE WALTER,** | : | **Civil No.  1:19-CV-769** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 20th day of April, 2020, in accordance with the accompanying memorandum opinion, the final decision of the Commissioner is AFFIRMED. The Clerk of Court is directed to close this case.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge